mitted by the statute, to wit, to the extent of an increase of 50 per centum of ¼ cent per gallon, or a total rate of ⅜ cent per gallon.

Not only is this interpretation in harmony and conformity with the laws of the United States as in force and effect at the times here pertinent, but it gives effect thereto, and, furthermore, it does no violence to the external relations of the United States represented by the Venezuelan Trade Agreement. That agreement did not necessarily establish a rate of ½ cent per gallon upon overquota petroleum, etc. Article II of the said agreement, as reported in T. D. 50015, provided that such articles should, on their importation into the United States of America, be exempt from customs and other duties *in excess* of those set forth and provided for in the said agreement. Item 3422 of schedule II of the agreement specified that the rate on overquota petroleum, etc., "shall not exceed" ½ cent per gallon. In other words, the agreement bound the United States not to impose duties in excess of ½ cent per gallon, but did not constitute a barrier to the imposition of duties of *less* than ½ cent per gallon.

The claim in plaintiffs' protests, either as originally filed or as amended, for assessment of the petroleum at bar at ⅜ cent per gallon is, therefore, sustained. In all other respects and as to all other claims, the said protests are overruled.

Judgment will issue accordingly.

(C. D. 1800)

JOHN S. CONNOR *v.* UNITED STATES

United States Customs Court, First Division

(Decided August 30, 1956) ·

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Richard M. Kozinn* and *Dorothy C. Bennett*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of this protest consists of marble articles forming parts of altars, a pulpit, and communion railings. It was imported at the port of Baltimore, Md., on November 16, 1951, and free entry was claimed on entry under the provisions of paragraph 1774 of the Tariff Act of 1930, as in force and effect prior to the amendment thereof by Public Law 392, 82d Congress, approved June 12, 1952. At the time of importation, the paragraph read as follows:

[Free list.]

PAR. 1774. Altars, pulpits, communion tables, baptismal fonts, shrines, or parts of any of the foregoing, and statuary (except casts of plaster of Paris, or of compositions of paper or papier-mâché), imported in good faith for presentation (without charge) to, and for the use of, any corporation or association organized and operated exclusively for religious purposes.

It appears that the evidence required by the Customs Regulations, section 10.51, to support such a claim for free entry, in the form of a declaration by the importer on customs Form 3331, and letters of presentation and acceptance were filed, and the entry was liquidated as entered on July 18, 1952. The supporting evidence indicated that the merchandise had been imported for presentation to the Roman Catholic Church of St. Therese of the Infant Jesus, Chicago, Ill., without cost to the donee, and that the donors were three societies affiliated with the said church.

It further appears that, on July 14, 1954, the collector of customs at Baltimore received a letter from the Customs Agency Service in that city, advising him that the supervising customs agent at Chicago was of the opinion that the entry here involved was a false entry. Attached to the said letter was a copy of a letter, dated July 13, 1954, from the acting supervising customs agent in Chicago to the supervising customs agent in Baltimore, giving the results of investigations by the Customs Agency Service concerning the entry here in question. These letters are before us as defendant's collective exhibit D, and further reference will be made to them.

On July 16, 1954, the collector of customs reliquidated the entry here involved, classifying the merchandise as manufactures of marble,

not specially provided for, and assessing duty thereon at the rate of 25 per centum ad valorem under the provisions of paragraph 232 (d) of the Tariff Act of 1930. On the face of the entry papers, the collector indicated section 521 of the Tariff Act of 1930 as authority for his action in so reliquidating the entry. The said section reads as follows:

SEC. 521. RELIQUIDATION ON ACCOUNT OF FRAUD.

If the collector finds probable cause to believe there is fraud in the case, he may reliquidate an entry within two years (exclusive of the time during which a protest is pending) after the date of liquidation or last reliquidation.

The protest herein is directed against the action of the collector in reliquidating the entry on two alternative grounds: First, that the reliquidation of July 16, 1954, was invalid for the reason that, at the time of reliquidation, the collector had no probable cause to believe there was fraud in the case, and, alternatively, that the merchandise was entitled to free entry under paragraph 1774, either as originally enacted or as amended by Public Law 392 of June 12, 1952.

Inasmuch as the first ground stated goes to the legality of the reliquidation, the issue raised thereby must be determined first. In this instance, our decision on that question will make unnecessary a consideration of the alternative claim.

Because the reliquidation was made after the time when the original liquidation had become final and conclusive under section 514 of the Tariff Act of 1930, and in accordance with numerous decisions on the subject, among which may be cited *Pacific Brokerage Co.* v. *United States*, 3 Cust. Ct. 20, C. D. 193, the defendant assumed the burden of establishing that as the basis for reliquidation under section 521, *supra*, the collector had probable cause for believing there was fraud in the case.

For this purpose, it called to the stand three customs officers and offered several documentary exhibits. It clearly appears, however, that the only documents, aside from the entry in the case, which were before the collector at the time he made his decision that there was probable cause to believe there was fraud in the case were the letters, hereinbefore referred to, which were received in evidence as defendant's collective exhibit D. Inasmuch as we are required, by the issues raised in this case, to determine whether the collector had probable cause to believe there was fraud in the case *at the time he ordered the reliquidation of the entry*, none of the documentary evidence, other than that contained in the aforementioned exhibit and the entry, has any bearing on the issue and it will not be considered herein.

The power conferred by section 521 permits an exception to the statutory finality and conclusiveness attaching to liquidations of entries at the expiration of 60 days from the date thereof. Section

514, Tariff Act of 1930.´ In view of the unquestionable desirability of settling such matters as soon as possible, it is manifest that the exercise of the extraordinary power conferred by section 521 must be held within strict limits. As was said by the Supreme Court of the United States in *F. Vitelli & Son* v. *United States*, 250 U. S. 355, of a predecessor statute—

Indisputable also is it, as stated by the Court of Customs Appeals and long previously pointed out in *United States* v. *Phelps*, 17 Blatchf. 312, that the remedy intended to be accomplished by the section in question was to prevent the right to reliquidate, which had previously been exerted without limit, from being exercised except in the particular conditions stated, and thus in the interest of ·the citizen to circumscribe the power to the instances specified in order that uncertainty as to the finality of customs entries might be removed and the security of commercial transactions be safeguarded.

The deputy collector of customs who acted for the collector in the matter at hand described the circumstances which led up to the reliquidation as follows: That, on July 14, 1954, he received from a customs agent in Baltimore the letters received in evidence as collective exhibit D; that he talked the matter over with his chief, presumably the collector, and referred the invoice back to the appraiser for advisory classification; that, upon receiving the appraiser's advisory classification, he completed the tentative reliquidation and took the whole file to the chief liquidator for the comptroller of customs; and that the official reliquidation was completed on July 16, 1954.

At no point in his direct examination did the witness state that he based his reliquidation of the entry upon all of the statements contained in the letters, collective exhibit D. On cross-examination, he stated that he believed there was fraud in the case, because there was a conflict between the statements shown on the entry papers and the report received from the supervising customs agent at Chicago, in that the former indicated that the merchandise had been imported for presentation without charge to the church, while the latter indicated that the donors never had control, title, or possession of the imported articles.

We are of the opinion that the fact that a conflict existed between the entry statements and the information in the report, in the circumstances of this case, was insufficient to justify a belief that fraud existed in the case. It was known to the deputy collector that the particular provisions of the act, paragraph 1774, had been the subject of some litigation; that the precise status of donors and donees, because of the many and varied situations which might and did arise, depended in each case upon the circumstances peculiar thereto. Indeed, his attention was called, in collective exhibit D, to the fact that Congress had, 2 years previously, made a clarifying amendment

making academic the situation presented by the evidence before the collector.

Under the circumstances, we think that, in a reasonable sense, the conflict between the entry statements and the report was referable to a difference in understanding or interpretation of the requirements of the statute and regulations, rather than to an intention to defraud the revenue of the United States.

As has been indicated, it does not appear that the collector based his reliquidation upon the entire content of the letters contained in collective exhibit D. Had he done so, we are of the opinion that his action would have been tainted by a highly improper suggestion contained in the letter from the supervising customs agent to the effect that, even if the collector should not deem reliquidation to be in order, i. e., if he should be unable to find that there existed probable cause to believe that there was fraud in the case, such reliquidation should be made anyway, pending the arrival of a more complete report, at which time, if he were still of the opinion that action on his part was not justified, "he would then be able to re-reliquidate."

In view of the extraordinary power to disturb previously settled liquidations conferred by section 521, we believe that it must be strictly confined to the conditions specified in the statute, viz, that, before the expiration of 2 years from the date of liquidation, the collector must find that there is probable cause to believe there is fraud in the case. The suggestion that even though he might be unable to make that finding before the 2-year limitation expired, he should, nevertheless, invoke the power conferred by the section and affirm or negate his finding after the statutory period had expired appears to be extraordinary disregard of the plain provisions of the statute.

We find that the collector did not have probable cause to believe that fraud existed in the case. Consequently, the reliquidation of July 16, 1954, was illegal and void, and we so find.

Judgment will, therefore, issue accordingly, directing reliquidation of the entry on the basis of the original liquidation of July 18, 1952.